IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

                Plaintiff,                                Criminal No. 20-206
                                                             ELECTRONICALLY FILED

     v.

TYRELL JOHNSON,

                Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER OF COURT**

This matter comes before the Court on Defendant's Motion to Suppress Evidence. ECF 49. The Court held a suppression hearing on the suppression matter on December 9, 2021, at which time, Detective Frank Niemiec and Sergeant Neal Marbello testified on behalf of the Government.

In light of this Court's Findings of Fact and Conclusions of Law, set forth below, Defendant's Motion to Suppress will be DENIED. An Order to this effect is set forth below.

**I. Findings of Fact**

    **A. Background**

1. On August 19, 2020, a one-count indictment was returned against Defendant alleging that on or about August 13, 2020, in the Western District of Pennsylvania, Defendant, knowing he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce, a firearm, namely a 9mm Smith and Wesson SD9 pistol. ECF 18.

2.  Defendant was arraigned on August 27, 2020, and pled not guilty to the charge in the indictment and was ordered to be detained.  ECF 23 and ECF 24.

3.  On June 9, 2021, Defendant filed a motion to suppress evidence and brief in support of same.  ECF 49, ECF 50.

4.  In a nutshell, Defendant's motion sought to suppress the evidence of the seizure the Smith & Wesson 9mm SD9 pistol, two identification cards for Defendant, and "all cell phone evidence derived from Defendant's arrest and search, the seizure and search of Defendant's cell phone, and the seizure and search of the vehicle in which Defendant was an occupant at the time of his arrest."  Id.

5.  The Government responded to this motion on June 30, 2021.  ECF 51.

6.  Due to the COVID-19 pandemic, and the parties' desire to conduct an in-person suppression hearing, the suppression hearing was held on December 9, 2021, and the hearing was transcribed.  ECF 57 and ECF 58, respectively.

7.  Both parties filed their well-written proposed findings of fact and conclusions of law on February 28, 2022.  ECF 59 (the Government's proposed findings and conclusions) and ECF 60 (Defendant's proposed findings and conclusions).

**B.  William Johnson and 9 Briggs Street**

8.  On August 13, 2020, City of Pittsburgh Police, with whom Detective Niemiec is employed, were investigating a robbery.  ECF 58, p. 5.

9.  The Court finds Detective Niemiec's testimony credible when he explained during the suppression hearing that, around 2:00 pm on August 13, 2020, he and four fellow officers went to the area of 9 Briggs Street in Pittsburgh, Pennsylvania. Id.

10.  Importantly, the Detective credibly testified that he and his fellow officers were looking for William Johnson and Martino Stein in connection with an armed robbery that had occurred earlier in the day.   Id.

11.  Detective Niemiec also credibly stated that William Johnson also was the subject of an ongoing drug investigation.  Id., p. 15.

12.  On the date and time in question, Detective Niemiec was conducting surveillance on 9 Briggs Street in an unmarked police car around the corner and several blocks away from 9 Briggs Street, while other officers were observing foot traffic in and out of 9 Briggs Street.  Id. at 5-6.

13.  The Detective credibly testified that Martino Stein was identified by a fellow police officer as leaving 9 Briggs Street.  However, approximately 45 minutes later, William Johnson, who was driving a blue Kia Spectra, pulled in front of 9 Briggs Street, exited the Kia, entered 9 Briggs Street, and then returned to the Kia approximately 2 minutes later carrying a black backpack.  Id. at 6.

14.  Detective Niemiec credibly explained that as William Johnson exited the residence at 9 Briggs Street and approached the Kia, he and Detective Anderson converged onto Briggs Street in their unmarked police car with the emergency lights activated. As the two Detectives emerged from their police car, identifying themselves as police officers, Johnson fled, and they chased after him on foot.  Id., p. 6-7; and Gov't Ex. 5 – Detective Niemiec's Body Camera video.

15. During the evidentiary hearing, this Court watched the entirety of the recording (slightly less than 13 minutes), captured through Detective Niemiec's body camera, relating to the incident in question.  Gov't Ex. 5.  The Court finds as fact that Gov't Ex. 5 contains all of the

relevant interactions Detective Niemiec had with William Johnson and with the Defendant on the day in question and corroborates Detective Niemiec's testimony.  Gov't Ex. 5.

### C. Detective Niemiec's Interactions with William Johnson

16.  As Detective Niemiec exited his police vehicle, identified himself as a policeman, and instructed William Johnson to "stop," Johnson threw a black backpack to the ground where it landed on a vacant lot.  ECF 58, p. 8.

17.  Detective Niemiec credibly testified, and the body camera recording supports a finding, that as Johnson continued to run away from the detective, he was grabbing at the front center of his waistband, causing the detective to surmise that he had a firearm on his person.  Id., p. 9.

18.  Johnson stopped running when he came to a wall, and another police officer recovered a pistol from Johnson's person.  Id.

19.  Next, Detective Niemiec credibly testified that he recovered the black backpack that he saw Johnson toss in the air, and then Detective Niemiec returned to the blue Kia where a fellow police officer was holding the two occupants (one of whom was Defendant) inside the Kia at gunpoint.  Id.

20.  Detective Niemiec credibly testified that two men were seated in the blue Kia – notably Defendant, Tyrell Johnson, was seated in the rear of the Kia.  Id.

21.  As he approached the Kia, Detective Niemiec credibly testified that he detected a strong odor of freshly burnt marijuana emanating from the partially opened rear window where Defendant was seated.  Id., p. 10.

**D. The Search of the Kia and Defendant, Tyrell Johnson**

22. As a result of his observations, specifcally after smelling the scent of marijuana, Detective Niemiec credibly testified that he asked another officer for assistance in removing the occupants of the Kia so he could conduct a search of the vehicle.  Id., p. 11.  The Court finds that Detective Niemiec credibly explained that he needed to search the vehicle because:

> (a) he had just helped to apprehend a "felony warrant suspect [William Johnson] who was armed with a pistol[;]"
>
> (b) that suspect (William Johnson) had previously been the driver of the blue Kia;
>
> (c) he had concerns that the occupants of the blue Kia, as associates of the William Johnson, could also be armed; and
>
> (d) given the odor of marijuana emanating from the car, he thought drugs could be inside the blue Kia.[1]

Id.

23. Next, Detective Niemiec and his fellow officer removed Defendant (and the other occupant) from the vehicle, placed Defendant in handcuffs, and had him sit on the ground after conducting a pat down search for weapons.  The Court finds that Detective Niemiec credibly testified that no weapons were found on Defendant's person, and that Defendant was detained, but not arrested, at this juncture.  Id.

24. After Defendant and the other occupant were secured on the curb, Detective Niemiec opened the black backpack and recovered what he recognized to be either raw heroin or fentanyl, hundreds of stamp bags, and ink stampers from inside the backpack.  Id., p. 12.

---

[1] The Court notes that Sergeant Neal Marbello also was present when Detective Niemiec first approached the blue Kia and talked to Defendant.  His testimony, which the Court also finds credible, indicates that he did not personally smell any odor of marijuana.   This Court finds as fact that Detective Niemiec believed he smelled the odor, and does not find it contrary that Sergeant Marbello (who was present at the time of this incident and who also testified at the suppression hearing) did not.

25.  Next, Detective Niemiec credibly testified that he conducted a search of the blue Kia and found a black fanny pack in the trunk of the vehicle; and inside the fanny pack were two credit cards with Defendant's name, "Tyrell Johnson," on both of them, as well as a Smith and Wesson 9mm SD9 pistol.  Id.

26.  After finding the drugs and drug-related items in the black backpack which was tossed away by William Johnson, and finding the two credit cards issued to "Tyrell Johnson" and a Smith and Wesson 9mm SD9 pistol in the black fanny pack in the trunk of the Kia, Defendant was informed he was being arrested.   Id.

27.  The Court further finds as fact that Detective Niemiec credibly testified that Defendant asked the police officers to retrieve his cell phone (a purple iPhone) from the rear seat of the Kia after he had been placed under arrest.  Id., p. 13.

28.  The officers seized Defendant's iPhone, ultimately turned it over to a DEA task force officer, who in turn, obtained a search warrant to search the contents of the phone.

29.   Around the same time that Defendant's phone was located in the back seat of the Kia, Defendant was asked if he had any identification on him, and he informed the police officers that his ID was located in his pant's pocket along with "a bag of weed."  Id., p. 14.  The officers recovered a small bag of marijuana from Defendant's pant's pocket.  Id., p. 13.

## II. Conclusions of Law

**1. The Court concludes as a matter of law that the Government met its burden of proof that the police officers had probable cause to search blue Kia.**

"The law of search and seizure remains focused on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of

our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Com. v. Johnson*, 68 A.3d 930, 935 (Pa. Super. 2013), citing *Commonwealth v. Bostick*, 958 A.2d 543, 556 (Pa. Super. 2008). Suppression law has evolved with societal views and technological advances. *Commonwealth v. Johnson*, 268 A.3d 424 (Pa. Super. 2021) (fn 5). *See, e.g., Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (warrantless vehicle searches require both probable cause and exigent circumstances under the state constitution, overruling *Commonwealth v. Gary*, 91 A.3d 102, 138 (Pa. 2014) ("prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required")); see also *Commonwealth v. Gallagher*, 2021 PA Super 204 (Oct. 12, 2021) (*en banc*) (affirming grant of suppression where defendant consented verbally and in writing to search of his cell phone, but could not "have made a knowing, voluntary" consent because he did not know "the true scope of [the] rights he was waiving," which involved "total capture of all cell phone data, including data he may not have known the phone contained.").

Under the "automobile exception" to the warrant requirement, law enforcement may conduct a warrantless search of a vehicle if there is "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Dickerson*, No. 1:16-CR-212, 2021 WL 5038862, at *10 (M.D. Pa. Oct. 29, 2021), citing *United States v. Donahue*, 764 F.3d 293, 299-300 (3d Cir. 2014) (citations omitted). Probable cause to search, similar to probable cause to arrest, exists if there is a "fair probability" that evidence of a crime or contraband will be found in a vehicle. See *id*.

This Court bases its conclusion that the law enforcement officers properly conducted a warrantless search of the blue Kia (after removing Defendant and the other occupant from the

vehicle) because there was probable cause to believe that the Kia contained evidence of a crime. As specifically noted in finding of fact no. 22, above, Detective Niemiec credibly explained that he needed to search the Kia, because: (1) he had just helped to apprehend William Johnson, who was a "felony warrant suspect who was armed with a pistol[;]" (2) William Johnson had only moments before his apprehension and arrest had been the driver of the blue Kia; (3) he had concerns that the two occupants of the blue Kia – one of whom was Tyrell Johnson – as associates of William Johnson, could also be armed; and (4) given the odor of marijuana emanating from the car, furthered his belief that drugs could be inside the blue Kia.

Thus, the Court concludes that given the totality of the circumstances then present, especially the apprehension of William Johnson, a felony warrant suspect, who had just been driving the Kia, the police had both: (1) probable cause to believe that the vehicle contained evidence of a crime, and (2) exigent circumstances to search the two individuals who were seated the Kia, and the Kia itself, for any weapons, because they had just recovered a weapon from William Johnson's person.

**2. The Court concludes as a matter of law that the Government met its burden of proof that the police officers properly detained Defendant.**

Law enforcement officers may briefly detain a person if they have a reasonable, articulable suspicion that criminal activity is afoot. *Summerville v. Fuentes*, No. 19-3240, 2021 WL 4129563, at *2 (3d Cir. Sept. 10, 2021). Police officers must act with reasonable diligence and may not unreasonably delay in confirming or dispelling their suspicions of criminal activity. *Id.*, citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (explaining that police must diligently investigate to "confirm or dispel their suspicions quickly."). Of particular importance is whether the police are diligent in accomplishing the purpose of the stop as rapidly as possible.

*United States v. Robinson,* 821 F. App'x 141, 144 (3d Cir. 2020). The odor of marijuana emanating from blue Kia, where Defendant was seated as a backseat passenger, provided the police with reasonable suspicion to detain Defendant, while they continued to conduct a very brief investigation.

In light of the fact that William Johnson, who, minutes before his arrest, had been the driver of blue Kia with Defendant present in the rear seat, and given that William Johnson threw his backpack away upon seeing and/or hearing Detective Niemiec approach him as he was about to return to the Kia, the Court concludes that securing Defendant in handcuffs and placing him on the curb, while the search of the vehicle was conducted, was not an improper detention of Defendant, given the entirety of the circumstances present – most notably the recovery of a firearm from William Johnson.

The Court further concludes that the law enforcement officers, on site during this incident, had to detain Defendant, given their reasonable, articulable suspicions that Defendant, along with William Johnson, were actively engaging in criminal activity. Here, as detailed in the Court's Findings of Facts, above, Detective Niemiec, smelled what he thought was fresh burnt marijuana as he approached the open rear window of the blue Kia where Defendant was seated and, in an efficient manner, removed Defendant from the vehicle to safely conduct a pat down of Defendant and to search the vehicle for contraband.

Given the Detective's specialized federal task force officer training, along with his 8 years on the Pittsburgh Police Force, and his own personal law enforcement experiences with the narcotics and vice units, the Court concludes that the police developed a reasonable suspicion that Defendant was engaging in criminal activity. Thus, the Court concludes that given the

police detective's knowledge relating to the nature of drug trafficking, the brief amount of time Defendant was detained was not a prolonged period of time.

**3.  The Court concludes as a matter of law that the Government met its burden of proof that the police officers properly seized Defendant's cell phone.**

Because this Court has concluded that Defendant's detention was not unlawful, nor that he was unlawfully arrested, the seizure of Defendant's cell phone was proper.  Defendant's cell phone was seized by the police within moments after a weapon (the Smith and Wesson 9mm SD9 pistol) was found in the trunk of the Kia inside a black fanny pack which also contained two credit cards with Defendant's name on them.  Once the police discovered the firearm in the fanny pack, along with two credit cards issued to Defendant, the police properly seized Defendant's phone.  Moreover, this seizure occurred incident to the arrest of Defendant, making their seizure of the phone proper.

### III. Decision

Based on the foregoing, this Court will DENY Defendant's Motion to Suppress Evidence in its entirety.  ECF 49.

### ORDER

AND NOW, this 30th day of March, 2022, upon consideration of Defendant's Motion to Suppress Evidence (ECF 49), the evidence proffered at the suppression hearing held on December 9, 2021, and the submission by both Parties, this Court hereby DENIES Defendant's Motion to Suppress Evidence.

BY THE COURT,

s/ Arthur J. Schwab
United States District Judge

10

cc:      All ECF Registered Counsel of Record